### FIRESTONE et al. v. HARVEY.

(Circuit Court of Appeals, Sixth Circuit. December 7, 1909.)

No. 1,962.

BANKRUPTCY (§ 408*)—GROUNDS FOR REFUSAL OF DISCHARGE—"FALSE STATEMENT IN WRITING" TO OBTAIN CREDIT.

A bankrupt was operating a private bank, and on daily settlements with another bank it was the custom when the difference either way exceeded $500 for the debtor bank to give the other a draft therefor on some other bank. Several times the bankrupt had given such drafts when he did not have a deposit to meet them, but all except the last two were provided for and paid on presentation. The last two were drawn when he was insolvent by his assistant cashier without his knowledge and were not paid. *Held*, that such drafts were not materially false statements in writing made by the bankrupt for the purpose of obtaining property on credit within the meaning of Bankr. Act July 1, 1898, c. 541, § 14b, subd. 3, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427) as amended in 1903 (Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1909, p. 1310]), which barred his right to a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 408.*]

Appeal from the District Court of the United States for the Northern District of Ohio.

In the matter of George B. Harvey, bankrupt. On appeal by Solomon J. Firestone and others from an order granting a discharge. Affirmed.

This is an appeal from an order granting a discharge to a bankrupt. The appellants, being creditors of the bankrupt, Harvey, objected to his discharge and filed specifications.

The specifications were as follows:

"(1) On January 23, 1908, said George B. Harvey, doing business as the Lisbon Banking Company, fraudulently obtained from said Firestone Bros. on credit valuable property of the value of $2,808.03, consisting of checks by sundry persons on money deposited by them in said banking company upon the materially false statement in writing, which is draft No. 8,497, hereinafter mentioned, signed by W. L. Armstrong, assistant cashier of said banking company, with the knowledge, consent and direction of said George B. Harvey that said banking company had a deposit of $2,808.03 in the Columbus Savings & Trust Company of Columbus, Ohio, and that said money would be paid to said Firestone Bros. upon due presentation upon a draft given by said banking company to said Firestone Bros., of which the following is a copy:

"'The Lisbon Banking Company of Lisbon.

"'No. 8497.

"'Lisbon, Ohio, January 23, 1908.

"'Pay to the order of Firestone Bros. $2,808.03, twenty-eight hundred and eight 03-100 dollars.

"'Columbus Savings & Trust Co.          W. L. Armstrong,
   "'Columbus, Ohio.                     Assistant Cashier.'

"Said banking company did not have said money on deposit in said Columbus Savings & Trust Company at or subsequently to that time, and said banking company and said George B. Harvey were then insolvent, and obtained said property of the value of $2,808.03 from said Firestone Bros. upon said credit, fraudulently and without the means of paying for the same, all of which said George B. Harvey then and there well knew.

"Said draft was refused payment on January 25, 1908, by said Columbus Savings & Trust Company, and has not been paid.

"(2) On January 24, 1908, said George B. Harvey, doing business as the Lisbon Banking Company fraudulently obtained from said Firestone Bros., on credit, valuable property of the value of $800.28 consisting of checks by sundry persons on money deposited by them in said banking company upon the materially false statement in writing which is draft No. 8,498 hereinafter mentioned, signed by W. L. Armstrong, assistant cashier of said banking company, with the knowledge, consent, and direction of said George B. Harvey, that said banking company had a deposit of $800.28 in the Columbus Savings & Trust Company of Columbus, Ohio, and that said money would be paid to said Firestone Bros., upon due presentation upon a draft given by said Banking Company to said Firestone Bros. of which the following is a copy:

"'The Lisbon Banking Company of Lisbon.

"'No. 8498.

"'Lisbon, Ohio, January 24, 1908.

"'Pay to the order Firestone Bros., $800.28, eight hundred and 28-100 dollars.

"'Columbus Savings & Trust Co.          W. L. Armstrong,
   "'Columbus, Ohio.                     Assistant Cashier.'

"Said banking company did not have said money on deposit in said Columbus Savings & Trust Company at or subsequently to that time, and said banking company and said George B. Harvey were then insolvent, and obtained said property of the value of $800.08 from said Firestone Bros. upon said

credit fraudulently and without the means of paying for the same, all of which said George B. Harvey then and there well knew.

"Said draft was refused payment on January 27, 1908, by said Columbus Savings & Trust Company, and has not been paid."

The reply of the bankrupt was in these words:

"George B. Harvey, for answer to the specifications filed by Firestone Bros. in opposition to his discharge, says that he admits that on January 23 and 24, 1908, he was doing business as the Lisbon Banking Company; that W. L. Armstrong, as assistant cashier of said banking company, executed and delivered to said Firestone Bros. the two drafts, Nos. 8,497 and 8,498, on the Columbus Savings & Trust Company, copies of which are set out in said specifications; that neither at the time said drafts were issued, nor subsequently thereto, did the Lisbon Banking Company have on deposit in said Columbus Savings & Trust Company money sufficient to meet either of said drafts; that at the time said drafts were issued said banking company and said George B. Harvey were insolvent; that payment of said drafts was refused by the Columbus Savings & Trust Company at the times alleged in said specifications, and they have not since been paid; that Firestone Bros. is a partnership consisting of the persons mentioned in the specifications in opposition to the discharge.

"Said George B. Harvey denies each and every allegation in said specifications not hereinbefore expressly admitted."

The hearing was upon the specifications and the answer, and upon an agreed statement of facts in these words:

"(1) That on and for some time prior to the 24th day of January, 1908, George B. Harvey was doing business at Lisbon, Ohio, in the name of the Lisbon Banking Company, and that he was the sole proprietor of said bank and acting as cashier thereof, W. L. Armstrong acting as assistant cashier.

"(2) That 'Exhibit A' hereto attached is a correct exhibit of the account of the Lisbon Banking Company with the Columbus Savings & Trust Company from December 31, 1907, up to the time of the assignment made by George B. Harvey on January 25, 1908, as shown by the books of said trust company.

"(3) That the copies of drafts set out in the specifications are true copies of drafts executed and delivered by W. L. Armstrong, as assistant cashier of the Lisbon Banking Company, to Firestone Bros. on the days on which they, respectively, bear date; and said copies are admitted in evidence.

"(4) That the consideration for said drafts was the delivery to the Lisbon Banking Company by Firestone Bros. of checks drawn on, and a certificate of deposit issued by, said Lisbon Banking Company against funds then on deposit with said Lisbon Banking Company by the drawers of the checks and the holder of said certificate of deposit, that the amount of said checks and certificate of deposit for the $2,808.03 draft was $2,808.03, and that the amount of said checks for the $800.28 draft was $800.28.

"(5) That Firestone Bros. would not have surrendered said checks and certificate of deposit and accepted said drafts had they known that the money to meet said drafts was not upon deposit at said times in the Columbus Savings & Trust Company.

"(6) That on the presentation of said drafts to the drawee payment was refused, and they were protested for nonpayment.

"(7) That on and for some years prior to January 24, 1908, the Lisbon Banking Company and Firestone Bros. were engaged in the banking business in Lisbon, Ohio, and had daily settlements of balance between them, and usually settled such balances, when the amount thereof exceeded $500, by the debtor bank giving the creditor bank a draft for the amount on some other bank. The drafts mentioned in the specifications were given in accordance with said custom.

"(8) That George B. Harvey had no actual knowledge of the execution and delivery of the drafts, copies of which are set out in the specifications, until after both of them had been delivered, but did know the condition of the account with said trust company, and that said Armstrong had previously issued some drafts on said trust company when said banking company did not, at the time said drafts were drawn, have funds on deposit with said trust company sufficient to meet said drafts.

"(9) That Solomon J. Firestone and Edward Firestone are partners doing business as Firestone Bros."

The objections were overruled and the discharge granted.

W. G. Wells, for appellants.

N. B. Billingsley, for appellee.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

LURTON, Circuit Judge (after stating the facts as above). The objection to the discharge of the bankrupt is based upon the contention that the drawing of the two drafts by Armstrong, the assistant cashier, was ground for refusing a discharge under subdivision 3 of section 14b (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427]) of the bankruptcy act, namely, that the bankrupt had thereby "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit." The words quoted came into the law by the amendment of the act made in 1903. Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1310). This ground for denying a discharge was evidently leveled particularly at the practice of making false statements of one's financial condition by a buyer or borrower for the purpose of obtaining from the person to whom such false statement is made, in writing, the articles or money desired "on credit." The false statement in writing which is enough to deny a discharge implies a statement knowingly false, or made recklessly, without an honest belief in its truth, and with a purpose to mislead or deceive, and thereby obtain from the person to whom it is made property upon a credit.

In Gilpin v. Merchants' National Bank, 165 Fed. 607, 611, 91 C. C. A. 445, 449, 20 L. R. A. (N. S.) 1023, the Circuit Court of Appeals for the Third Circuit, speaking by Circuit Judge Gray, said of this clause, that:

"The written statement made by the bankrupt for the purpose of obtaining credit. etc., should be knowingly and intentionally untrue, in order to constitute a bar to the discharge of the bankrupt. In other words, 'false statement' connotes a guilty scienter on the part of the bankrupt. The primary and ordinary meaning of the word 'false' cannot be ignored. It is the primary meaning given in the ordinary lexicons of the English language. Webster gives as its primary meaning: 'Uttering falsehood; unveracious; given to deceit; dishonest.' As an adjective, it is correlative with the noun 'falsehood.' To charge a person with making a false statement is equivalent to charging him with uttering a falsehood, and imputes moral delinquency to the person so charged. It is true that the word may have a secondary meaning in certain collocations, and be merely equivalent to 'untrue' or 'incorrect.' But this is not the ordinary or usual signification attached to the word. To charge a person with making false entries in books of account means something more than that incorrect or untrue entries have been made, and it has been so held by the courts in the consideration of offenses of that character. The last edition of Bouvier's Law Dictionary says of the word 'false' that, when 'applied to the intentional act of a responsible being, it implies a purpose to deceive.' In Black's Law Dictionary, under the title 'false,' it is said: 'In law, this word means something more than untrue; it means something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud.' In a recent and well-accepted publication called

174 F.—37

'Words and Phrases,' the word 'false' is thus defined: · 'False means that which is not true, coupled with a lying ·intent.' Wood v. State, 48 Ga. 192, 297, 15 Am. Rep. 664. 'False in jurisprudence usually imports something more than the vernacular sense of 'erroneous' or 'untrue.' "

The theory upon which Harvey is to be held as having made a false statement, in writing, made by Armstrong, assistant cashier who drew these drafts, is based upon the fact of Harvey's actual insolvency at the time, his knowledge of the state of the account with the Columbus Bank, and that he knew also that Armstrong had before drawn drafts upon the same bank when there were no funds to meet them. But does it follow that, because Harvey had upon other occasions drawn such drafts when there were no funds· to meet them, these drafts, drawn confessedly without Harvey's direction, or knowledge, are enough to constitute them a false statement, knowingly false and made by Harvey with intent to mislead or deceive and thereby obtain checks against his bank about which he actually knew nothing? We think that is going too far. Does it even follow that if Armstrong himself were the bankrupt that the drawing of these drafts under the circumstances here in evidence would constitute a false statement within the meaning of this clause of the bankruptcy act? Had Armstrong no ground for an honest belief that these drafts would be met? Counsel for the appellants in their brief say that he had "the habit of drawing on the Columbus Bank when there were no funds with which to meet such drafts"; that "he had done this some 16 times between December 30, 1907, and January 22, 1908." Exhibit A seems to bear out this statement. But the inference from the same exhibit is that all such prior overdrafts were in some way provided for, the account showing deposit of funds shortly thereafter, so that at the end of the 16 transactions referred to there appeared a balance to the credit of Harvey's Bank of $192.83.

. The appellants, as well as the appellee,· seem to have been engaged in the banking business at Lisbon, and one of the facts in the agreed statement was that the two banks had daily settlements between them, and that, when the amount of any balance due from one to the other exceeded $500, the debtor bank would give the other bank a draft on some different bank for the amount. The drafts here involved were thus given under this clearing house plan of settlement.

Harvey may be civilly liable for drafts drawn by Armstrong in the course of such a business, but it is quite another thing to say that the drafts drawn by Armstrong under the circumstances of this case constitute that willful kind of false statement by Harvey necessary as a ground for preventing a discharge in bankruptcy.

Judgment affirmed.