### In re BOOMGAARDEN.

(District Court, D. Minnesota. Second Division. January 31, 1927.)

No. 2294.

1. Bankruptcy ⚭414(1)—Creditor, objecting to discharge, must prove bankrupt obtained credit by materially false written statement, relied on by creditor.

Burden is on creditor, objecting to discharge, to prove that bankrupt obtained money or property on credit by materially false written statement, made to creditor for purpose of obtaining credit, and relied on by creditor in extending credit.

2. Bankruptcy ⚭414(3)—Burden on creditor, objecting to bankrupt's discharge because of concealment of indebtedness in financial statement, held not sustained by evidence.

Evidence *held* insufficient to sustain burden, on creditor objecting to bankrupt's discharge, of proving that bankrupt willfully concealed indebtedness to his uncle, who was not pressing for payment, from bank in financial statement given to bank for purpose of procuring credit, and that bank extended credit in reliance on such statement.

In Bankruptcy. Application of William Boomgaarden, bankrupt, for discharge in bankruptcy. Special master's report, recommending denial of discharge, overruled, and discharge granted.

Johnson & Schaefer, of Ivanhoe, Minn., in opposition to report.

JOHN B. SANBORN, District Judge. This matter came on to be heard at special term on January 22, 1927, upon the report of the special master, recommending that the bankrupt be denied a discharge. Johnson & Schaefer, of Ivanhoe, Minn., appeared in opposition to the report, and there was no appearance by the objecting creditor.

The objections to the discharge of the bankrupt were based upon three financial statements given by the bankrupt to the First National Bank of Elkton, S. D., which it is claimed were materially false, given for the purpose of securing credit, and upon which credit was actually extended to the bankrupt. One of these statements was given November

21, 1921, one October 27, 1922, and one March 14, 1924. The master finds that the bankrupt's statements were knowingly and intentionally false in one substantial respect. As to this he says:

"The testimony indicates that he was indebted to his uncle, Wm. Mohnes, in the amount of $1,000, which indebtedness later passed by inheritance to the children of said uncle, and that he did not include this indebtedness in his financial statements, for the reason that the bank officers impressed upon him the necessity for making a favorable financial statement, and for the reason that his uncle did not need the money and would not press him. He states that he told the bank officers who wrote out each of these statements this fact, at the time that the statements were written out, and that it was omitted with the knowledge of the bank officers. He states under examination by his attorney that they said something about the Federal War Finance Corporation, or some other of the federal discounting agencies. The bankers deny any recollection of any such occurrence. The testimony of the bankrupt upon the point is not quite convincing to the special master. The bank officers appeared to testify frankly, and it is not possible to disbelieve their testimony. The bankrupt is an intelligent farmer, and the special master is under the impression that his recollection of these conversations was created by the necessities of his case. But, if it be true that he did make these statements false in this particular for the purpose of deceiving the bank and the rediscounting agencies, it seems that he has not helped himself by showing that the bank officer knew the facts."

The master then finds that the omission of the Mohnes debt from the statements was knowingly and fraudulently made, and without the knowledge of the bank officer with whom the bankrupt was dealing, and that the bankrupt procured credit, which was given in reliance upon the accuracy of the financial statements, which were materially false.

[1] It must be kept in mind that the burden is upon the objecting creditor to prove that the bankrupt obtained money or property on credit upon a materially false statement, that the statement was in writing, that it was made to the creditor for the purpose of obtaining credit, that it was known to be false by the bankrupt, and that the creditor relied upon it when he parted with his property. Matter of Wolff, Bankrupt (D. C.) 7 Am. Bankr. Rep. (N. S.) 365, 11 F.(2d) 293; Bank of Monroe v. Gleason (C. C. A.) 7 Am. Bankr. Rep. (N. S.) 56, 9 F.(2d) 520.

[2] Mr. Boomgaarden was a farmer living in the vicinity of Elkton, S. D., at the time these statements were given. He lived upon 160 acres of land, mortgaged for more than $9,000. He commenced dealing with the bank in 1918. At the time the first statement was given, he owed the bank $3,200 upon an unsecured note. He wished to renew the note. It was in this connection that the bank took the statement. He told the bank that he could not pay the note and wanted to extend it for the period of six months. This extension was granted on the strength of the financial statement, according to the banker. He did not pay this indebtedness, or the interest on it, but gave notes for interest as it became due, and on October 27, 1922, he owed $3,993.55. The banker says the interest notes were also taken on the strength of the financial statement of November 21, 1921.

The statement of October 27, 1922, was given for the same reason that the previous statement had been given—at the request of the bank, for securing a renewal of the then indebtedness. The bankrupt also secured at that time $350 additional credit. The officer of the bank claims that he relied upon the financial statement in extending this credit. On March 14, 1924, the bankrupt came in to give new notes to take the place of the old ones. His total indebtedness was then $4,177.25. He gave two notes, one for $3,300 and one for $761.55. The bank officers claim that these were accepted on the strength of his financial statement.

The first statement which the bankrupt gave showed current assets, consisting mostly of cattle, hogs, and farm implements, of $4,900, and current liabilities of $4,650, showing a surplus of current assets over current liabilities of $250. His homestead, which was the only real estate that he owned, was valued at $28,000, with a $9,700 mortgage against it. His next financial statement showed current assets of $5,480, and current liabilities of $5,243.55, or a surplus of less than $240. The homestead was put in at the same figure as before, and the mortgage indebtedness was substantially the same. The last statement showed current assets of $4,993, and current liabilities of $5,898.75 or a deficit of some $900. The homestead was $24,000; the mortgage, $9,500.

The answers to the various questions contained in the written statements were in the handwriting of the officer of the bank who took the statements. The bankrupt says he told him of the $1,000 he owed his uncle, and that it was suggested that it be left out to make a better statement. That is denied. A

finding either way would be justified. The serious question is whether the bankrupt willfully concealed the fact of the indebtedness for the purpose of procuring credit, and whether the concealment of the indebtedness had anything to do with the bank's extending credit.

The situation, to one familiar with conditions in the Northwest during the last few years, is obvious. The bankrupt was farming high-priced land, procured during the war, which was heavily mortgaged. His first statement was given after the value of lands and farm products had been deflated. His land was unsalable, and he could not pay his debts without going out of the farming business, and probably not then. The first statement which he gave did not entitle him to credit. His current assets were about the same as his current liabilities. His condition got steadily worse, instead of better. There was nothing that the bank could do, but put him out of business completely, or carry him along in the hopes that times would change. He was not even able to pay his interest in cash. That it would have made any difference to the bank, if it had known of the $1,000 indebtedness to the uncle, is, under the facts and circumstances disclosed by the evidence, so highly improbable as not to justify a finding to that effect, in my judgment. It seems to me that the objecting creditor failed to sustain the burden of proof in that regard.

For that reason, the report of the special master is overruled, and the bankrupt may have his discharge. It is so ordered.