## SPIES v. SYTSMA.
### No. 9287.

Circuit Court of Appeals, Eighth Circuit.
Feb. 9, 1932.

Edward D. Kelly, of Algona, Iowa, for appellant.

Before KENYON, VAN VALKENBURGH, and GARDNER, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

The above-named bankrupt and her husband, John Sytsma, farmers, filed voluntary petitions in bankruptcy at the same time. Each scheduled substantially the same property assets. Upon application for discharge the same specifications of objection were filed against each. These specifications were, in substance, that the bankrupts had concealed and disposed of their property and effects with intent to hinder, delay, and defraud their creditors, and had failed to give any reasonable or satisfactory account of the disposition of said assets. All testimony heard and evidence introduced in the matter of opposition to the discharge of John Sytsma were, by agreement of counsel, made a part of the record in the like proceeding against his wife, appellee herein. His testimony, together with that concerning his transactions, occupies by far the greater part of the transcript. Of course, the court's action upon the application of John Sytsma is not included in this record. After hearing, the referee, to whom the matter had been referred, recommended that the specifications of opposition to the discharge of Mary Sytsma be dismissed. Appellant filed exceptions to this report of the referee, and the court, after argument and submission, and being advised in the premises, overruled these exceptions, approved and confirmed the findings of the referee, dismissed the specifications of objection, and granted the discharge of the bankrupt.

The contention of appellant is that the record establishes joint ownership of the property disposed of, and imposes equal responsibility upon the wife. After calling attention to the fact that both husband and wife described the same property in their bankruptcy schedules, much reliance, in brief and argument, is placed upon the following excerpts from appellee's testimony:

"Do you own that property together? She answered, 'I suppose we do.'

"Q. You just handled your financial affairs, that is, your property affairs, together under a joint ownership? A. Yes, sir.

"Q. Has that always been the situation for the last few years? A. Yes, sir.

"Q. So that any of the property that you folks owned was just property that belonged to both of you together? A. Sure was.

"Q. Beg pardon? A. Yes, sir, it was.

"Q. And that includes all the property that either one of you had during the last three or four years? A. Yes. * * *

"Q. Now, Mrs. Sytsma, can you tell at this time anything more about the disposition of the cattle, the hogs, the young livestock? A. No, I don't know a thing about it.

"Q. You are just leaving all that matter of accounting up to your husband? A. Yes, sir.

"Q. And whatever he says is correct as far as you are concerned? A. Yes, sir. He knows about our business.

"Q. Then you can't, Mrs. Sytsma, give us any further explanation as to where any of this property went? A. No, sir. I don't—I told you the other day that I didn't know anything about it. * * *

"Q. You haven't paid any bills to amount to anything in size? A. No, sir.

"Q. Sold some property though, haven't you? A. Well, yes.

"Q. Now, what did you sell? A. Well, I don't know what we did sell. You will have to—

"Q. You disposed of all your property. You moved over into Minnesota, did you not? A. Well, all we had.

"Q. Now, what did you sell and where did you sell it? A. I don't know. You will have to talk to him about that."

The referee sums up his view of the case in the following findings of fact and conclusions of law:

"That at the time of the filing of the petition in bankruptcy, and prior thereto, the bankrupt owned no livestock or farm machinery or other personal property, other than her own wearing apparel, but that at said times above referred to all of said personal property belonged to her husband, John C. Sytsma.

"That the bankrupt did not transfer, remove or conceal any property, or permit the same to be removed or concealed, for the reason that she owned no property.

"It appears to your referee that the bankrupt at no time owned any of the property which is the subject of the controversy here. The bankrupt, John C. Sytsma, executed the bill of sale, a copy of which is in evidence as 'Exhibit B', under date of April 25, 1929, wherein he purported to convey two mules, four horses, fifteen milch cows, nineteen head of yearling steers and heifers, eighty head of Spotted Poland hogs, farm machinery, Buick touring car, and all hay, grain and feed to his wife, the bankrupt, but this bill of sale was not supported by any valid consideration. The bankrupt testified that her husband owed her no money; also that she did not pay any consideration for this transfer. Also, on May 19th, following, the bankrupt gave a financial statement to the First National Bank of Graettinger, wherein he listed as his own property the same property as is mentioned in the bill of sale. Similarly, he did the same thing in another financial statement given to the Farmers Savings Bank of Wallingford, June 3, 1929. Neither the bankrupt nor her husband treated this bill of sale as of any validity, and, there being no consideration for it, it would seem that the bill of sale had no effect so far as transferring the title to any property belonging to John C. Sytsma to the bankrupt. In her examination the bankrupt, in answer to a question as to whether or not she and her husband owned the 'property together', stated 'I suppose we do'. She again refers to the property as belonging to both of them together. In spite of these statements, it does not seem to your referee that such statements have the effect of vesting the legal title to one-half of the property in the bankrupt, but rather, that it was a mere method of the bankrupt expressing the idea that the Sytsma family had an interest in the property. Her statements are more consistent with the idea that she was expressing an interest in property which produced a livelihood for the family, rather than as a declaration of ownership of legal title to an individual one-half interest in the property. Taking all of the facts and circumstances together, it does not seem to your referee that the bankrupt had any property to transfer, remove or conceal."

It is, of course, true that the report of the referee as to the facts, and his conclusions of law, are advisory merely, and that "it is the duty of the court to exercise an independent judgment on the question of discharge." In re Neiderheiser (C. C. A. 8) 45 F.(2d) 489, 490. This the court did, as his decree establishes. Furthermore, discharge in bankruptcy is a legal right, and the bur-

522

den is on an objector to establish facts relied upon to prevent it. In re Neiderheiser, supra; Bank of Monroe v. Gleeson (C. C. A. 8) 9 F.(2d) 520. In such matters the questions raised are questions of fact addressed to the sound discretion of the District Court, and, although suspicious circumstances may be shown, it is for that court to determine from all the evidence before it whether or not the bankrupt is entitled to discharge. This question, of the right to discharge being addressed to the sound discretion of the trial judge, his decision will not be disturbed except in clear case of abuse of that discretion, or obvious mistake of law. In re Silverstein (C. C. A. 9) 35 F.(2d) 497, and cases cited.

This court has recognized that it is uniformly held that a bankrupt is entitled to have the act liberally construed in his favor, and is entitled to a discharge unless it is clearly shown that he has committed some act which precludes this right. Farmers' Sav. Bank of Grimes, Iowa v. Allen (C. C. A.) 41 F.(2d) 208.

We think the record fully supports the order of the trial court, and that its decree should be affirmed. It is so ordered.