**In re JOHNSON.**
No. 12035.

District Court, D. Connecticut.
May 26, 1932.

Pullman & Comley, of Bridgeport, Conn., for bankrupt.

Marsh, Stoddard & Day, of Bridgeport, Conn., for Delaware County Nat. Bank.

HINCKS, District Judge.

This matter comes before the court upon the exceptions of the bankrupt to the report of the special master recommending that the bankrupt's application for a discharge be denied. The application for a discharge was heard by the special master upon specifications of objection duly filed by the Delaware County National Bank of Chester, Pa. (hereinafter called the "bank"), charging a false statement within the provisions of section 14b (3) of the Bankruptcy Act, as amended (11 USCA § 32 (b) (3).

The transcript of evidence discloses that in 1926 the bankrupt was an executive officer and substantial stockholder of a prosperous steel company in Pennsylvania. Both the corporation and the bankrupt were customers of the bank. Early in February, 1926, it was desired to increase the plant of the corporation, and the bankrupt applied for an additional and substantial loan from the bank, the proceeds to be used by him for the purchase of additional stock in the corporation. The bank requested a financial statement, and on February 8th, or thereabouts, the bankrupt sent the bank a statement, which is the basis of the present controversy, copy of which is shown in the footnote.[1]

The truth and accuracy of this statement is not questioned except with respect to the two items listed among the assets which are stated to be "Trust Inheritance from Mother" and "Inheritance Father's Estate," neither of which was listed in the bankrupt's schedules. At the time this statement was given, it was known to the bank that the bankrupt's father and mother were still in life, and the special master has found in effect that the bankrupt intended, and the bank understood, that the item "Inheritance Father's Estate" was an expectancy merely, and consequently was not of itself a materially false statement in writing such as to bar a discharge. The bank, however, by its specifications of objection, contends that the item "Trust Inheritance from Mother" was a statement materially false, and, as such, sufficient to bar a discharge, and the special master has sustained this contention.

---

### [1] Assets

| | | |
|---|---|---|
| Cash | $ | 450.00 |
| Stocks | | 49,400.00 |
| Trust Inheritance from Mother | | 480,000.00 |
| Inheritance Father's estate | | 800,000.00 to $1,000,000 |
| Furniture and Personal Property | | 15,000.00 |
| | | $1,344,850.00 |

### Liabilities

| | | |
|---|---|---|
| Notes | $ | 31,500.00 |
| Bank Loan (Del. County) | | 13,200.00 |
| Accounts Payable | | 1,578.49 |
| Other liabilities accumulated to date | | 600.00 |
| | $ | 46,878.49 |
| Net worth | | $1,297,971.51 |

### Personal Income

| | | |
|---|---|---|
| Salary | $ | 18,000.00 |
| Other income | | 7,500.00 |
| | $ | 25,500.00 |

Personal Life Insurance $125,000.
February 8, 1926

Allen A. Johnson

Upon this issue the transcript of evidence further discloses that after the statement in question was furnished, and before the loan was made, the subject-matter of the statement was discussed in conversations at which there were present the bankrupt, Eagan his business associate, and the president and cashier of the bank. Each of these persons has testified in these proceedings, and no one of them agrees with the others as to just what was said by the bankrupt with respect to the item of "Trust Inheritance from Mother." The bankrupt himself testified that at this time he told the bank that the item was an expectancy only; that he had understood his grandmother to say that she was going to create a trust which he would come into upon attaining the age of forty, or when his mother died. The bankrupt testified further that he had in fact had such a conversation with his grandmother, and that in 1919 "she specifically brought it up again. I understood her to say at that time this trust had been created"; and that when his grandmother died in 1927, he learned for the first time that he took nothing by her will. The testimony of the president of the bank was vague and inconsistent. Speaking of the conversations had after the statement was furnished, he said, first, that he understood from the bankrupt that both items were expectancies only, but on redirect examination modified his testimony and said that he understood from the bankrupt that one of the two items in question (he did not know which) represented an estate which would come to the bankrupt either upon the death of a parent or when he attained the age of forty; and that this item (whichever it was) represented an existing trust. He testified, however, that he made no inquiry whatever, not even of the bankrupt, as to the terms of the trust, or as to whether it was irrevocable. The cashier testified that the bankrupt said that he would receive one of the two items (as to which he was not sure) upon attaining the age of forty years. He also confirmed the fact that no further inquiry was made, even of the bankrupt, as to the details of the trust. Eagan, the bankrupt's business associate, who also was present, testified that the bankrupt informed the bank officials that the trust inheritance represented something "established by his grandfather and was to be given to him at the time of the death of his grandmother—not his mother—or at the age of forty." And both of the bank officials expressly disclaimed any knowledge that anything said to them by the bankrupt was contrary to

the fact as it existed at that time, and both, without objection, testified to a belief that the bankrupt at the time believed all he said to them to be true.

Further facts disclosed by the transcript, having some bearing on the issue involved, are as follows: That the loan made at this time was secured by a substantial amount of the bankrupt's stock in the steel company; also by an assignment of his personal insurance which, however, was term insurance without cash surrender value. That subsequently, in 1927, the bankrupt arranged for his father to put up second mortgage bonds of the steel company of $25,000 par value as additional collateral for the loan. It further appeared that subsequent to the loan, even up to the date of these proceedings, the bank had made no inquiries and did not even know whether the bankrupt's parent, upon whose death depended the falling in of the trust estate, had died, or whether the bankrupt had attained the age of forty. In fact, the bankrupt became forty not until February, 1932, subsequent to the master's hearing.

In view of the fact that the loan in question, when made, was supported by a substantial amount of collateral, and that the bankrupt at the time was in possession of a salary of $18,000 per annum, with substantial other income, a reading of the transcript creates some doubt as to whether the loan in question was induced by the inclusion in the bankrupt's statement of the two items in question. This doubt is fortified by the fact that the bank at no time, even after the loan had apparently gone sour, made inquiry as to the details of the "trust"; also by the fact that the bankrupt's corporation as a result of the loan was given fresh capital and, at least to that extent, more assets to satisfy its corporate obligations to the bank. However, in view of the testimony of the bank officials that they did rely to some extent at least upon one of the two items in question (even though they cannot now recall which item it was), I should be reluctant to disturb the conclusion of the special master that the loan was induced by one of these items. In re Slocum (C. C. A.) 22 F. (2d) 282.

It is on the law rather than the facts that I find myself compelled to disagree with the special master. He reports as follows:

"The bankrupt has testified that his grandmother told him this in 1913, and that he was surprised and shocked to learn after her death in 1927 that he had not received anything by her will.

"The bankrupt did not *know* that a trust had been created for him and then existed, and the single conversation with his grandmother thirteen years before did not honestly warrant its inclusion in a bank statement. In re Gilpin, 160 F. 171, 20 L. R. A. (N. S.) 1023, 20 A. B. R. 374; In re Weitzman, 11 F.(2d) 897, 898, 6 A. B. R. (N. S.) 427."

But the Weitzman Case holds merely that a statement may come within the bar of this section if made "recklessly" "with no honest belief that it is true." The Gilpin Case was decided by the District Court and holds that the false statement referred to in this section is a statement not necessarily fraudulent in intent, but one that is untrue in fact, irrespective of fraudulent intent. Thus it is clear that the report of the master is predicated upon the proposition that a statement may be false within the bar of this section without any intent to deceive on the part of the bankrupt.

To this proposition I must withhold assent. For it appears that the case of In re Gilpin, thus referred to, was reversed by the Circuit Court of Appeals for the Third Circuit upon this very point. Gilpin v. Merchants National Bank, 165 F. 607, 611, 20 L. R. A. (N.S.) 1023, and the appellate court expressly holds that to come within the bar of section 14b the statement "should be knowingly and intentionally untrue." "In other words, 'false statement' connotes a guilty scienter on the part of the bankrupt." And the case of In re Terens (D. C.) 172 F. 938, upon which also counsel for the bank relies, in so far as it holds that no scienter is necessary, expressly and solely relies upon the earlier Gilpin Case, not realizing apparently that this decision had been reversed, as just set forth.

The Court of Appeals in this circuit has followed the Third Circuit and held in the case of In re Rosenfeld, 262 F. 876, that an intention to deceive is necessary to bring a case within the bar of this section. And ever since this ruling has been followed in this circuit. In re Stafford (D. C.) 226 F. 127. The same rule has been adopted by the Fifth Circuit, Franklin v. Monning Dry Goods Co., 217 F. 929; also in the Eighth Circuit, Farmers' Savings Bank of Grimes v. Allen, 41 F.(2d) 208; also in the Seventh Circuit, In re Matthews, 272 F. 263; also in the Sixth Circuit, Firestone et al., v. Harvey,

174 F. 574; also in the Fourth Circuit, Frank v. Michigan Paper Co. et al., 179 F. 776, 30 L. R. A. (N. S.) 623.

With such unanimity on the part of the Circuit Courts of Appeal, it will not lightly be held that the Supreme Court in the case of Morimura, Arai & Co. v. Taback, 279 U. S. 24, 49 S. Ct. 212, 215, 73 L. Ed. 586, intended to change the construction so widely adopted. In that case it was said that a statement may come within the bar of this section when "it was made and acquiesced in either with actual knowledge that it was incorrect, or with reckless indifference to the actual facts, without examining the available source of knowledge which lay at hand, and with no reasonable ground to believe that it was in fact correct." That, however, was a case in which a bankrupt merchant had himself made a statement which was at complete variance with his own books, using for this purpose extraneous records without reference to his own books. As I view the decision, it holds, not that a statement made wholly without a scienter may come within the bar of the statute, but rather that scienter may be inferred from a reckless indifference to actual facts, in the absence of "reasonable ground to believe that it (the statement) was in fact correct."

Such being the law, let us apply it to the facts at hand. At the outset it must be noticed that the position of the bank is inconsistent with the testimony of all its witnesses. For as we have seen, the bank can succeed in its objections to the discharge only if a fraudulent intent on the part of the bankrupt in making the statement is found from the underlying facts. Yet the bank's officials each testify to the belief that the bankrupt was without fraudulent intent. And if it be deemed that such testimony is not conclusive upon the court as representing merely the opinion or conclusion of the witnesses, examination of the evidence discloses no basis for an inference of fraud, even without extending credit to the absolution found in the bankrupt's own testimony. For disregarding the several self-contradictions in the testimony of the bank officials, and assembling all that is most unfavorable to the bankrupt, still the inference of a fraudulent intent does not follow with reasonable certainty. The gist of the bank's charge seems to be that a trust was represented to have been then existing. But it is not charged that the trust was represented to be irrevocable or indefeasible. For

ought that yet appears a trust revocable or contingent may in fact have then existed; and, if not, the bankrupt may have been honestly mistaken in his belief that such was the case. One does not lightly catechise a wealthy grandparent for details of a testamentary intent only partially disclosed. If the bank did not choose to make further inquiry, even of the bankrupt, surely under the circumstances fraud is not imputable against the latter for failure to undertake so delicate a mission. In these respects the facts here differ widely from those upon which the decision was predicated in the Morimura Case, supra, or in the case of Woolen Corporation of America v. Gitnig (C. C. A.) 33 F.(2d) 259.

This conclusion, I think, is supported by the presence of other items in the statement. The item of "Inheritance Father's Estate," when the bank knew that his father was still living, it is conceded, could not possibly import an intent to deceive. Also, the inclusion of life insurance which, to the knowledge of the bank, was term insurance without cash surrender value, was evidently innocent. No fraud is charged with respect to these two items. Certainly, if this bankrupt had had the slightest intent to deceive by including an expectancy only in the hope that the bank would construe it to be an actual asset, he would not have included in the same brief statement two other items which were obviously expectancies only and thus reasonably likely to put the bank on its guard.

My conclusion that the bankrupt was without any intent to deceive in making the statement in question makes it unnecessary to decide whether the amendment of 1926 (44 Stat. 663) is applicable. For even if the amendment has retroactive effect in shifting the burden of proof to the bankrupt upon a showing "to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this section (14b), would prevent his discharge in bankruptcy," the vague, inconsistent, and inconclusive testimony of the bank's witnesses cannot in my judgment be said to constitute "reasonable grounds for believing" that this bankrupt was actuated by fraudulent intent.

The bankrupt's exceptions to the master's report are therefore sustained, and an order for his discharge in bankruptcy may be submitted.