THIRD NAT. BANK v. SCHATTEN.
No. 6876.

Circuit Court of Appeals, Sixth Circuit.
Feb. 7, 1936.

E. J. Walsh, of Nashville, Tenn., for appellant.

Elkin Garfinkle and Jos. E. Pasternack, both of Nashville, Tenn., for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Appeal from an order granting a discharge in bankruptcy to appellee, Max Schatten, herein called the bankrupt.

The bankrupt applied for his discharge, and appellant, Third National Bank, filed specifications of grounds of opposition thereto under section 14b (2) and (3) of the Bankruptcy Act, as amended (11 U.S. C. § 32 (b) (2) and (3), 11 U.S.C.A. § 32 (b) (2, 3), and the bankrupt answered. The matter was referred to the referee as special master for findings and report.

There were three specifications, to wit: (1) That on August 17, 1931, the bankrupt obtained an extension or renewal of credit by making to appellant a materially false statement in writing respecting his financial condition; (2) that on July 29, 1932, he likewise obtained an extension or renewal of credit by making to appellant a materially false statement in writing respecting his financial condition; and (3) that the bankrupt had failed to keep books of account from which his financial condition might have been ascertained.

The special master made no finding upon the third specification, and appellant did not except to his failure to do so. It was not therefore before the court, and is not subject to review here. Vehon v. Ullman, 147 F. 694 (C.C.A.7).

The special master found that the proof fully sustained the first and second specifications, and recommended that the discharge be denied. The District Court sustained the bankrupt's exceptions to the report and granted the discharge.

There was no substantial evidence to sustain the first specification, and the court was therefore right in overruling it.

The principal complaint is that the court erred in failing to sustain the specification based upon the financial statement of July 29, 1932. This statement was made at the request of appellant, and was signed by the bankrupt when he went to the bank to renew his note for $3,100. Fleming, assistant cashier of appellant and in charge of its credit department, personally assisted the bankrupt at his request in making out the statement upon a form used by appellant. Fleming filled in the appropriate blank spaces thereof in accordance with information furnished by the bankrupt. When the statement was completed, it was submitted to the bankrupt for his inspection, he signed it without reading it, and thereupon appellant permitted him to renew his note. The practice was similar to that followed by appellant in its dealings with the bankrupt on at least five previous occasions.

The statement showed that the bankrupt had quick assets of $5,395. made up of cash on hand and in banks and of merchandise; and current liabilities, exclusive of mortgages, of $4,700, made up of the note to appellant of $3,100 and accounts payable of $1,600.

The facts were as found by the special master, that on July 29, 1932, the bankrupt actually owed, in addition to the liabilities set forth in the statement and some other small ones not listed therein, a note of $300 to the Mutual Loan Bank of Nashville, and $2,800 to his children, and that his current liabilities therefore exceeded his current assets in the sum of $2,405.

Fleming testified that, had these facts appeared in the financial statement, the bank would not have renewed his loan for $3,100, and that he would have recommended that it be collected or secured.

In explanation of the minor discrepancies in accounts receivable, the bankrupt testified that he did not bring his books or memoranda to appellant, but gave the information based upon his recollection and estimate; that the $1,600 figure was an estimate in round numbers; that he did not intend thereby to conceal anything from appellant; and that "he did not go back to look up and figure how much he owed on the accounts, and that he was not requested to do so."

The bankrupt explained the $2,800 indebtedness to his children as follows: That each of his three children, after the death of their mother in February, 1931, became entitled to $1,000 in insurance money; that he received it as guardian and deposited it in various banks, and that soon thereafter he used it in his merchandise business;

that he thought, at the time, it was his money as well as the children's, because he had paid for the insurance and was supporting and educating the children at his home. He said: "I am taking care of the children, because my wife has left me the three kids, I had to take care of them, I didn't know it was against the rule to use these kids' money, I figured the kids' money was to use as well as mine, I didn't figure I borrowed this money, I took it not knowing I could not do it, that it was against the law. * * *"

He further stated: "That he found that he had done wrong when" (on March 10, 1933) "he received a letter from the county court clerk asking him to make a report on what he had done with the money, and that the clerk had advised him to put it down in a book. He did not know that he was supposed to make a record of it; he then put it down in a book."

Evidently what the bankrupt meant by the statement that "he then put it down in a book" was that he charged himself with the insurance money. From the location of these entries in the books it might be inferred that he made these charges against himself as early as 1931, but he states that he did not actually enter them until after he had notice from the county court clerk in 1933.

■ In Morimura, Arai & Co. v. Taback, 279 U.S. 24, 33, 49 S.Ct. 212, 215, 73 L.Ed. 586, the court said that a written statement under section 14b (3) to overturn a discharge must not only have been materially false, but must have been made "with actual knowledge that it was incorrect, or with reckless indifference to the actual facts * * * and with no reasonable ground to believe that it was in fact correct."

In construing the same section, we said in Firestone v. Harvey (C.C.A.) 174 F. 574, 577: "The false statement in writing which is enough to deny a discharge implies a statement knowingly false, or made recklessly, without an honest belief in its truth, and with a purpose to mislead or deceive."

In Franklin v. Monning Dry Goods Co., 217 F. 929, 932 (C.C.A.5), it was said that the word "false" as used in section 14b (3) of the Bankruptcy Act means false in the sense of being "intentionally untrue."

In Aller-Wilmes Jewelry Co. v. Osborn, 231 F. 907 (C.C.A.8), it was held that a statement, to be materially false, so as to justify the denial of a discharge to a bankrupt under section 14b (3), must not only be false in fact, but must have been with the intention to deceive.

These decisions were made before the amendment of 1926 to section 14b, but they are no less relevant by reason of the amendment. The effect of the amendment was to place the burden upon the bankrupt of proving that he had not committed an act which would prevent his discharge, once the objector had shown reasonable grounds for believing that he had. Since the amendment, the decisions have been consistent with Firestone v. Harvey, supra; Franklin v. Monning, supra, and Aller-Wilmes Jewelry Co. v. Osborn, supra. See Bank of Monroe v. Gleeson, 9 F.(2d) 520 (C.C.A.8); Baash-Ross Tool Co. et al. v. Stephens, 73 F.(2d) 902, 906 (C.C.A.9); Hartsfield Co. v. Smith, 61 F.(2d) 723, 724 (C.C.A.5); and Farmers Savings Bank v. Allen, 41 F.(2d) 208, 211 (C.C.A.8).

■ We think that upon the record the court was not required to deny the discharge. The report of the special master was advisory only. The bankrupt had a limited education; he had been a merchant for twenty-two years; had had no outside business experience; had been a patron of appellant; had been a borrower; and had never shown a disposition to misrepresent his financial condition. He had deposited $1,002 of the insurance fund with appellant. It does not appear that it required him to report his financial condition with meticulous care. It is conceded that appellant did not rely altogether upon the statement, but, as was its custom, made an independent investigation.

The right to the discharge was addressed to the discretion of the court, In re Merritt, 28 F.(2d) 679 (C.C.A.9); Baash-Ross Tool Co. v. Stephens, supra, not to an arbitrary discretion, of course, but to its sound judicial discretion. We do not find that there was a gross abuse of the court's function. The bankrupt had one purpose, common both to his business and his family; i. e., to make ends meet. The basis of the court's order is not disclosed, but we think it might reasonably have concluded that the bankrupt, situated as he was, naturally even if erroneously, believed that he was not incurring legal liability for the insurance fund of his children (which he had himself made possible) by using it in the business out of which the children were being supported. Such a finding would neg-

ative any suggestion of deliberate, intentional falsification which might conceivably have arisen from appellant's evidence.

The order of the District Court is affirmed.