**In re VENTURELLA.**

No. 17676.

United States District Court, D. Connecticut.

Nov. 4, 1938.

| | | |
|---|---|---:|
| 1. | Dr. Louis Lang | $1200. |
| 2. | Edward Hollander | 600. |
| 3. | No. Bergen Hospital | 521. |
| 4. | Joseph H. Gaudielle | 202. |
| 5. | J. Johnson & Sons | 62. |
| 6. | Charles Scribner Sons | 13. |
| 7. | Heyman Bros. | 28. |

John M. Chapnick, of New Haven, Conn., for objecting creditor.

Arthur Klein, of New Haven, Conn., for bankrupt.

THOMAS, District Judge.

This matter is now before the court on exceptions to the report of the special master who sustained objections to the bankrupt's petition for discharge. The substance of the objections was that the bankrupt had obtained money upon a materially false statement respecting his financial condition. No part of the testimony or the evidence has been returned, except the document which evidences the bankrupt's application for a loan from the objecting creditor and the note for $300, which is dated August 19, 1936.

The Master has found generally that the bankrupt did obtain money upon a materially false statement, but he has also made certain findings of fact which constitute the predicate for his general finding. An examination of these special findings indicates that they afford no adequate basis for the general finding.

The bankrupt filled out and signed an application for a loan from the Personal Finance Company which was the basis for the loan of the money. In that application, the printed matter, to which he attached his signature, asserted, inter alia, that: "exclusive of such amount as I owe you, I hereby state, affirm, represent and warrant to you that my total indebtedness and liabilities on this date do not exceed $350."

The Master finds that the bankrupt failed to disclose the additional liabilities hereinafter enumerated, and for that reason concludes that the bankrupt, "with intent to conceal his true financial condition * * * gave this financial statement; that he knowingly and fraudulently omitted listing his true liabilities."

A list of the liabilities to which reference has been made and which it was found by the Master that the bankrupt omitted from the application for the loan are the following:

Before proceeding further it may be well to advert at this point to a few principles of law governing such matters. The Bankruptcy Act provides that a discharge may be denied where the bankrupt obtained money or credit by making or causing to be made a materially false statement, in writing, respecting his financial condition. Section 14b(3), 11 U.S.C.A. § 32(b) (3). The burden of proving objections to a discharge lies upon the objecting creditor and he must also prove the facts sufficiently to show the intent to deceive. In re Strauss, D.C., 4 F.Supp. 810; Baash-Ross Tool Co. v. Stephens, 9 Cir., 73 F.2d 902; In re Johnson, 1 F.Supp. 649, D.C.Conn. A materially false statement must be one the falsity of which is known to the bankrupt, and must be made with intent to deceive. Matter of Strauss, supra; Baash-Ross Tool Co., supra; In re Johnson, supra; Third National Bank v. Schatten, 6 Cir., 81 F.2d 538. Nor is the failure to disclose a matter or circumstance affecting the financial status of the debtor a ground for denying a discharge, unless such disclosure was fairly called for or implicit in the representation which, in fact, was made. Judge Swan, in this Circuit, speaking for the Circuit Court of Appeals, in Re Little, 65 F.2d 777, at the bottom of page 778, said: "Failure to make a full and fair oral disclosure is not a ground for denying a bankrupt his discharge. There must be a false and fraudulent statement in writing."

Nor must we overlook the fact that a discharge in bankruptcy is a legal right, subject to being defeated only by some act of the bankrupt which is clearly set forth in the Act itself. Times without number the courts have held that a false statement in writing, within the intent and meaning of the Bankruptcy Act, which will justify a court in denying a discharge implies a statement which, to the bankrupt, is knowingly false or one made recklessly without honest belief in its truth, and made with the intent to mislead or deceive. Used in this connection the word false is used in the sense that the statement is intentionally untrue.

With these principles in mind, let us turn to the special findings of the Master for the purpose of ascertaining how far, if at all, they sustain what, in effect, constitutes the general verdict.

### The Alleged Claim of Dr. Lang for $1,200.

The Master finds that this claim was for medical services furnished in 1931–32, and that the bankrupt claimed a defense to this claim, arising out of the fact, as found by the Master, that the treatment given by the claimant was improper and negligent resulting in permanent disability of the bankrupt's leg. If this be the fact, then as a proposition of law the bankrupt was not indebted to Dr. Lang at the time he made his financial statement, and his omission to schedule this as a liability was a statement neither false in fact nor in law. In any event, it could hardly be said that the failure to schedule such a claim constituted that wilful attempt of deception which is contemplated by the statute.

### The Alleged Claim of Edward Hollander $600.

The Master finds that Hollander was paid in full before the statement was issued to the finance company. It is difficult to understand why the non-disclosure of this alleged debt is treated as a false statement.

### The Alleged Claim of North Bergen Hospital $521.

The bankrupt was advised by his counsel that the hospital was equally liable with Dr. Lang for the alleged malpractice inflicted upon him, and that therefore his defense to both claims was good. This is tantamount to saying that he did not owe them anything. Assuming that in this contention the bankrupt was mistaken as a matter of law, or that his counsel who so advised him was mistaken, I cannot find from this circumstance that wilful perversion of the truth which is a necessary predicate for a finding of the making of a materially false statement.

### The Alleged Claim of J. H. Gaudielle $202.

The Master finds that Attorney Gaudielle was not retained by the bankrupt, but by the bankrupt's brother, and that the bankrupt never either guaranteed or promised to pay this claim to Gaudielle.

Under these circumstances, and even assuming that the legal services were for the benefit of the bankrupt, I fail to see that the bankrupt was, as a matter of law, indebted to Gaudielle. His non-inclusion of any alleged claim by Gaudielle is therefore proper.

The bankrupt included all these claims in his schedules in this proceeding on the advice of his attorney, who, apparently, feared that these alleged creditors might refuse to be bound by the discharge unless they were notified. It is to be noted, however, that none of them have filed any proofs of claim in this proceeding.

Furthermore, it is always possible that a person may be cognizant of the assertion of a claim against him, which he, in good faith, knows or honestly believes to be unfounded. The average man when asked to list his liabilities cannot be expected to assume that alleged claims are called for as well as recognized liabilities. If a questionnaire intends to cover mere claims,—as distinguished from conceded debts and liabilities, the questioner can resort to the very simple procedure of asking for just that information. A credit application should not be framed as a trap for the unwary. In order to ascertain the true facts, and show by the written statement what are alleged claims against an applicant for credit as distinguished from debts admittedly due, he can be asked: "Are there any claims against you which you dispute? If so, state them."

As for claims 5, 6 and 7, there is no finding that these debts were in existence on August 19th, 1936, the date when the bankrupt signed his financial statement. Without such a finding, the conclusion that the financial statement was materially false, is unwarranted. In view of this aspect of the matter, it is not necessary to inquire into the further question as to whether, in view of the smallness of these amounts, their omission, in any event, made the statement materially false.

In view of the fact that the special findings failed to furnish support for the general finding of the Master, I am constrained to overrule his recommendation and to grant the petition for discharge.

Counsel will submit decree accordingly properly consented to as to form.