NATIONAL LIFE AND CASUALTY INSURANCE COMPANY, APPELLANT, v. PAUL A. HAMMEL, INSURANCE COMMISSIONER OF THE STATE OF NEVADA, RESPONDENT.

No. 4815

March 3, 1965                         399 P.2d 446

———

[Rehearing denied March 19, 1965]

*Lewis, Roca, Scoville, Beauchamp & Linton* and *John P. Frank,* of Phoenix, Arizona; *Alex. A. Garroway,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, Carson City, and *D. W. Priest,* Chief Deputy Attorney General, for Respondent.

# OPINION

By the Court, THOMPSON, J.:

The Nevada Insurance Commissioner found that National Life and Casualty Insurance Company had violated an insurance law of this state, and revoked its license to do business in Nevada. NRS 683.090(1).[1] National had filed with the Commissioner its annual financial statement for the year ending December 31, 1962. The statement contained an entry which was not precisely correct. Because of the inaccuracy (to be hereinafter discussed) the Commissioner considered the statement to have been filed "knowing the same to contain a material statement which is false" in violation of NRS 686.100(2) and, accordingly, ordered revocation. The district court, reviewing the information presented to the Commissioner (Urban Renewal Agency v. Iacometti, 79 Nev. 113, 379 P.2d 466) found that the Commissioner had acted within the permissible limits of his discretion, and sustained the revocation order. National appeals. We have concluded that on the record presented to the Insurance Commissioner no reasonable basis exists for finding that National violated the intendment of NRS 686.100(2).[2] Therefore we annul his license revocation order as having been arbitrarily and capriciously made. We turn briefly to the relevant facts.

---

[1]NRS 683.090(1) reads: "1. The commissioner may revoke or suspend the license of a foreign or alien company or in lieu thereof may impose a fine not to exceed $2,000 whenever he shall find that such company * * * (e) Has violated any insurance law of this state or has in this state violated its charter or exceeded its corporate powers."

[2]NRS 686.100(2) reads: "Any director, officer, agent or employee of any company who subscribes to, makes, or concurs in making or publishing, any annual or other statement required by law, knowing the same to contain any material statement which is false, shall be punished by a fine of not more than $5,000."

National Life and Casualty Insurance Company is an Arizona corporation licensed to do business in Arizona, Utah, Nevada, Colorado, New Mexico and Texas. During 1962 National and a Utah company New Hemisphere Life Insurance Company were negotiating a "treaty of bulk insurance" for the reinsurance and assumption of the assets and liabilities of New Hemisphere which totaled $885,208.95. By the treaty New Hemisphere ceded to National "as of 12:00 noon Monday, December 31, 1962" all its interest in its policies and reserves, and these were accepted and assumed by National. New Hemisphere was to keep all premiums received by it prior to 12:00 noon on December 31, 1962. As all necessary steps to place the treaty in operation could not be taken until sometime after December 31, 1962, it was provided that when those steps were completed the treaty would be retroactively effective as of December 31, 1962. National bound itself to the treaty in 1962, and the Board of Directors of New Hemisphere approved it on December 27, 1962 and again on January 25, 1963. However, approval of the stockholders of New Hemisphere and of the Commissioner of Insurance of the State of Utah was required before the treaty could be fully effectuated. The stockholders' approving vote was secured April 30, 1963, and on August 12, 1963, the Utah Commissioner's approval was obtained.

Nevada law, NRS 686.090, required National to file its financial statement for the year ending 1962 with the Insurance Commissioner by March 1, 1963. The pending transaction with New Hemisphere created a reporting problem for National. The transaction was on the verge of closing and, upon closing, was to be retroactive to December 31, 1962. Query: Should the transaction be reflected in its 1962 financial statement? Not knowing the best way to proceed, National inquired of the Senior Examiner of the Insurance Department of the State of Arizona (the state of its incorporation and the principal place of its business) and was advised to reflect the pending transaction in the 1962 annual statement to be filed with the insurance department of that state. Accordingly, National did so, and apparently

assumed that the same reporting method would be acceptable to the insurance commissioners of Utah and Nevada. Thus it is that the financial statement for the year ending 1962 shows, inter alia, the sum of $885,208.95 as "admitted assets to equal policy holders reserves and claims, liability for expenses, etc. assumed from New Hemisphere Insurance Company as of Dec. 31, 1962," and the same amount as "liability in assumption of policy holders reserves, claims, expenses and undistributed funds from New Hemisphere Insurance Company." However, as the transaction had not in fact been finalized when National filed its financial statements with Utah and Nevada, those states, contrary to Arizona, chose not to approve its inclusion as an appropriate item. Utah ordered a revised statement. Nevada initiated the instant proceeding. It is within this context that we must determine, as a matter of law, whether the intendment of NRS 686.100(2) was breached by National.

The statute authorizes punishment, by fine up to $5,000, of a director, officer, agent or employee of a company who subscribes to, makes or concurs in making or publishing, any annual or other statement required by law, "knowing the same to contain any material statement which is false." It is clear that the statute does not authorize penalty for mere error. Had the legislature intended to reach error rather than a material false statement knowingly made, different language would have been used. The word "false" has moral overtones. Federal court decisions dealing with the same question under the Bankruptcy Act point up this fact. A financial statement which is merely erroneous, with no intent to deceive, is not a false statement within the meaning of the Bankruptcy Statute. Feldenstein v. Radio Distributing Co., 6 Cir., 323 F.2d 892; Third National Bank v. Schatten, 6 Cir., 81 F.2d 538; Schapiro v. Tweedie Foot Wear Corp., 3 Cir., 131 F.2d 876; Annot., 59 A.L.R.2d 791. Clear and convincing proof is required. A suspicion is not enough. We hold that the same

rationale governs NRS 686.100(2). Before a statement may be deemed false within the intendment of that statute, clear and convincing evidence of an intent to deceive must be produced. To rule otherwise would exalt form over substance.

With these principles in mind, it is plain that NRS 686.100(2) does not touch the case before us. The record before the Commissioner supplies nothing from which a reasonable mind may infer intentional deceit by National or its authorized agents in preparing and filing the statement in question. All of the evidence is the other way. National sought advice from the Arizona Insurance Department and followed it in good faith. The almost, but not quite, completed transaction with New Hemisphere accordingly was reflected in its 1962 financial statements filed in Arizona, Utah and Nevada. That is all there is to the tale disclosed by this record.

Of course, hindsight shows National's true mistake —its assumption that Utah and Nevada, for reporting purposes, would treat the New Hemisphere transaction as Arizona required it to be treated. That mistake has nothing whatever to do with NRS 686.100(2). We find it unnecessary to discuss the other assigned errors.

Reversed.

BADT, J., and ZENOFF, D. J., concur.

MCNAMEE, C. J., being absent on account of illness, the Governor commissioned Honorable David Zenoff to sit in his place.